# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 24-00288-01-CR-W-BP |
| ) | |
| DAMYON COOK, ) | |
|     Defendant. ) | |

## ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS

On July 28, 2025, the Honorable W. Brian Gaddy issued a Report and Recommendation recommending that Defendant's Motion to Suppress be denied. (Doc. 44.) Defendant objected to the Report. (Doc. 49.) The Court has conducted a de novo review of the Record and Judge Gaddy's Report and Recommendation and agrees with his conclusions. Therefore, the Report and Recommendation is **adopted in its entirety**, and Defendant's Motion to Suppress, (Doc. 29), is **DENIED**.

## I. BACKGROUND

Because the Court adopts the factual findings included in Judge Gaddy's Report, the Court will not reiterate them all here. However, for ease of understanding, the Court provides a limited summary.

In November 2024, officers with the Kansas City, Missouri Police Department ("KCPD") were attempting to arrest Defendant, Damyon Cook, on several active warrants. On November 20, 2024, just before one o'clock p.m., the KCPD received notice that Defendant was near 75th Street and Troost Avenue in Kansas City. Using a mixture of helicopter and on-the-ground surveillance, KCPD officers tracked Defendant's location as he moved through Kansas City.

During the surveillance Detective Justin Williams saw a passenger enter and exit Defendant's car. After stopping at several locations, Defendant parked in the parking lot of a convenience store, where KCPD officers concluded it was safe to attempt the arrest. In determining the sequence of events that followed, the Court has not only reviewed the testimony given at the hearing on the Motion to Supress but has also viewed the evidence presented therein including the footage from the body cameras worn by Officer Chase Kuehl, Officer Carlos Mena, and Officer Justin Forrest.

The first police car, driven by Officer Forrest, pulled into the lot in front of Defendant's car. Defendant's car had heavily tinted windows, making it difficult for the officers to see into the car. The passenger in Defendant's car got out of the front passenger seat, got into another car, and drove away without following police orders. As the passenger drove away, Defendant attempted to back his car away from the police car, but Officer Forrest moved his car forward to stop Defendant.

A number of officers then arrived on scene to assist with the arrest. At least two officers commanded Defendant to put his hands up, to not move, and to not reach back into the car. Defendant repeatedly reached back into his car. Officers were concerned Defendant was reaching for a weapon, so they employed a flashbang grenade. Defendant stepped away from the car and began to comply, getting down on the ground when he was ordered to.

Two officers handcuffed Defendant while the other officers converged around Defendant's car to determine if there was anyone else in the car and if there were any weapons inside. The tinted windows made this attempt difficult. However, while patting Defendant down during a search incident to arrest. Officer Forrest recognized the keys were in Defendant's pocket and he reached in Defendant's pocket to retrieve them.

2

Officers then unlocked the car and confirmed no other occupants were in the car. This included a search of the trunk because rear passenger compartments in vehicles often have trunk access. This process took less than one minute. While performing this cursory check, Officer Forrest noticed a firearm in plain view tucked between the driver's seat and the center console. It was seized as evidence.

Defendant has now filed a Motion to Suppress, arguing that the (1) seizure of his car keys and (2) the subsequent search of his car and seizure of the firearm within it, violated the Fourth Amendment. The Government opposed. In addition to analyzing the parties' arguments, the Court may include additional facts as necessary.

## II. ANALYSIS

In his Motion to Suppress, Defendant first challenges the constitutionality of the seizure of his car keys from his pockets and search of his car on Fourth Amendment grounds. While law enforcement generally cannot seize items without a warrant, there is are several exceptions to this doctrine. *See United States v. Hill*, 386 F.3d 855, 858 (8th Cir. 2004). One such exception is searches incident to arrest, which occur as a Defendant is being placed under arrest for the purpose of assuring officer safety and securing items of evidentiary value. *E.g. Chimel v. California*, 395 U.S. 752, 762-63 (1969). "A police officer lawfully patting down a suspect's outer clothing may seize any object whose contour or mass makes its identity immediately apparent as incriminating evidence." *United States v. Cowan*, 674 F.3d 947, 953 (8th Cir. 2012) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)) (cleaned up) (internal quotations omitted). This exception applies to contraband as well as evidence related to criminal activity. *See United States v. Bustos-Torres*, 396 F.3d 935, 944 (8th Cir. 2005). When Defendant was arrested, Officer Forrest patted him down incident to arrest and recognized the feel of a car key in his pocket. The key was seized

3

and used for the protective sweep of Defendant's car. This is a valid search incident to arrest. *United States v. Wright*, 844 F.3d 759, 763 (8th Cir. 2016) (holding the seizure of car keys from the defendant's pockets to unlock his SUV was a valid search incident to arrest).

Another exception to the warrant requirement is protective sweeps conducted incident to arrest, where the Fourth Amendment permits a "a cursory visual inspection" of the areas a person may be hiding for the purpose of ensuring the safety of the arresting officers. *Maryland v. Buie*, 494 U.S. 325, 327 (1990). This sweep "lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises[,]" *id.* at 335-36, and must "be based on 'articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene[,]'" *United States v. Pile*, 820 F.3d 314, 316 (8th Cir. 2016) (quoting *id.* at 334). Officers may also search an arrestee's car for dangerous weapons where there is an "objectively reasonable concern for officer safety or the suspicion of danger." *United States v. Smith*, 645 F.3d 998, 1002-03 (8th Cir. 2011) (citations omitted).

As Judge Gaddy discussed, this case is similar to *United States v. Jones*, where the Eighth Circuit held that the protective sweep of a car was lawful when the officers were attempting to execute a warrant based on a crime that often involves the presence of firearms and, during the lead up to the arrest, the defendant leaned back into the car for a few seconds "before shutting the door and complying with the officers' commands." 471 F.3d 868, 875 (8th Cir. 2006). At the time of his arrest, Defendant had several felony warrants for his arrest, including for aggravated assault and being a felon in possession of a firearm. One passenger had already exited the car and fled the scene. When Defendant was exiting the car, he repeatedly tried to lean back into the car

4

against officers' orders. Finally, the significant window tint prevented officers from seeing into Defendant's car. These circumstances form the necessary basis of articulable facts and inferences to support a protective sweep of Defendant's car for other individuals and weapons.

Finally, Defendant argues that the firearm and any evidence obtained through the search of the car should be excluded as "fruit of the poisonous tree" under the exclusionary rule. *E.g. United States v. Tuton*, 893 F.3d 562, 568 (8th Cir. 2018). The exclusionary rule disincentivizes police from committing constitutional violations by excluding evidence obtained through constitutional violations and any evidence which may flow from it thereafter. *See United States v. Betts*, 88 F.4th 769, 773 (8th Cir. 2023). However, the KCPD officers involved in the November 20, 2025 arrest of defendant and search of his car did not commit any constitutional violations, so this doctrine does not apply.[1]

### III. CONCLUSION

The Court agrees with the Report's conclusions, specifically that (1) the seizure of Defendant's car keys and (2) the subsequent search of his car and seizure of contraband found within it did not violate the Fourth Amendment. Judge Gaddy's Report, (Doc. 44), is **adopted in its entirety**, and Defendant's Motion to Suppress, (Doc. 29), is **DENIED**.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
DATE: October 24, 2025     UNITED STATES DISTRICT COURT

---

[1] When the officers conducted the sweep of Defendant's car, they seized a firearm found next to the driver's seat, because it was in plain view. According to the plain view doctrine, a law enforcement officer does not violate a defendant's Fourth Amendment Rights where an officer seizes an item that (1) could be plainly viewed, (2) where the incriminating character of the object is immediately apparent, and (3) the officer has the "lawful right of access to the object itself." *United States v. Hughes*, 940 F.2d 1125, 1127 (8th Cir. 1991). Defendant does not dispute the firearm was in plain view or that the officers knew he was a felon at the time (and therefore unable to legally possess a firearm), rather Defendant argues that the officer did not have the right to search the car. However, as the protective sweep was constitutional, the seizure was justified under the plain view doctrine.